# In re Road in Plumcreek Township.

1. The Act of February 15th, 1860 (P. L. 53), which provides " that the number of road viewers hereafter to be appointed by the Court of Quarter Sessions of Armstrong county shall be three," applies *to both* public and private roads.

2. Where a public road is about to be opened, notice must be given to the land owner of the time and place of view and assessment of damages, but the fact that such notice was given need not appear upon the record, it may be established in the Quarter Session by parol. Where, however, it is proposed to open a private road through the land of another, the record must show that the latter had personal notice of the time and place of the meeting of the viewers, and of the time and place fixed for the assessment of damages, otherwise the return will not be confirmed.

3. A report of viewers, which fails to show the width of the road which they adopted as a basis for the computation of damages, will be set aside.

October 13th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

CERTIORARI to the Court of Quarter Sessions of *Armstrong county :* Of October and November Term 1885, No. 140.

This was, in the court below, a petition by A. W. Montgomery for a private road in Plumcreek township from coal mines on his land to a point on the Indiana Pike, partly over and partly under the surface lands of James Armstrong.

The record showed, *inter alia,* the following : The petition was filed December 21st, 1883, and on the same day the court appointed three viewers who filed their report, March 3d, 1884, which was indorsed by the court on that day, " approved *nisi* and road ordered to be opened twenty feet wide."

On May 28th, 1884, James Armstrong filed, *inter alia,* the following exceptions to the report of the viewers : (1.) The appointment of the three viewers and their report were without authority of law. (2.) The assessment and report of the three viewers of the damages of James Armstrong was unauthorized by law. (3.) The report of viewers does not show that personal notice of the intended assessment of the damages of James Armstrong and said view, and the time and place, etc., thereof, was given to him as required by law. (4.) There is no law authorizing a road of the character indicated and intended by the petition and report in this case, nor is there any law authorizing the appropriation of private property as indicated in said report, and the same, especially as to the turning room, is erroneous and illegal. (6.) There

was no coal mine open upon petitioner's land, and the description in his petition of the beginning of said road was vague, indefinite, uncertain and exceptionable. (10.) The report is erroneous in not showing the width the viewers adopted as a basis for the assessment or computation of damages. (12.) The report is erroneous and exceptionable in that it does not show the considerations moving the assessment of damages of James Armstrong at the meager sum of $18, and also in that it does not itemize such damages adjudging what amount is for the land appropriated, and what for the coal, etc., etc.

On July 7th, 1885, the court, NEALE, P. J., after argument, dismissed the exceptions and confirmed absolutely the report of the viewers.

James Armstrong then took this writ, assigning for error the dismissal of the above exceptions, the order of the court directing the road to be opened twenty feet wide, and the confirmation of the report of the viewers.

*J. M. Hunter*, for plaintiff in error.—The Act of the 15th February, 1860, fixes the number of road and bridge viewers in Armstrong county at three; provides for notice, and extends to said county the provisions of the second and third sections of the Act of the 6th of April, 1843. This Act of 1860, and the sections of the Act of 1843 (by it extended to Armstrong county), apply, as we claim, to public roads, and did not change or repeal the Act of 13th June, 1836, which fixed the number of viewers in private roads at six. If this position be correct, then the court should have sustained our first and second exceptions, the dismissing of which is the basis of our first and second assignments.

The notice given by the viewers in this case was the notice required in public roads. We maintain that such notice is not sufficient in case of private roads, and does not dispense with personal notice from the viewers, that they are about to assess the damages of the land owner. Now such personal notice must not only be given, but the record must show that it was given: Neeld's Road, 1 Barr, 355; Boyer's Road, 1 Wright, 259.

The law under which this proceeding was had imposes upon the persons appointed to view and lay out a road the duty of assessing the damages sustained by the land owners. We claim their report should show the width which they adopted as a basis for the computation or estimation of damages, and that the damages should be itemized: Clowes's Road, 7 Casey, 12.

14 OUTERBRIDGE—35

*Calvin Rayburn,* for defendant in error.—The 19th section of the Act of April 16th, 1838 (P. L., 642), and the Act of April 13th, 1868 (P. L., .92), upon which the proceedings in this case are based, must, to give them effect, be considered a part of the general road system of Pennsylvania: Neeld's Road, 1 Barr, 352; Keeling's Road, 9 P. F. S., 360; Durnall's Road, 8 Cas., 383.

The Acts as to private roads being considered as a part of the general road system, and the number of viewers, viz., six, as required by Act of 13th June, 1836, being changed to three by Act of 15th February, 1860, sec. 1, P. L., 53, the appointment of but three viewers in this case was authorized by law, and also their report and assessment of damages. The presumption is that the requirements of the statutes have been complied with by the viewers, and therefore it is not necessary specially so to state in the report unless specially required by the Act regulating the subject: Road in Middle Creek Twp., 9 Barr, 69.

Moreover, it cannot be denied that the exceptant was present at the time of the view and assessment of damages, although that fact does not appear upon the record.

The cases cited by counsel for exceptant as to notice, viz., Neeld's Road, 1 Barr, 355, and Boyer's Road, 1 Wr., 259, do not govern this case, as the records of neither case show that any notice whatever was given to the owners or occupants of the land, and both these cases are governed by Act of 13th June, 1836, which, as was before said, was silent as to notice, while the case in hand is governed as to notice by Act of 15th February, 1860, it being similar to Act of 27th February, 1845.

By rule of court, unless otherwise ordered, the width of all private roads in Armstrong county shall be twenty feet. The width of the road is for the court, and in this case the record shows it was fixed at twenty feet, as required by the above rule, and it is to be presumed that the viewers estimated their damages on this basis, unless exceptant shows by testimony that they acted otherwise.

Mr. Justice GORDON delivered the opinion of the court, October 26th, 1885.

The Act of 1836 requires the appointment of six viewers for the laying out of all roads whether. public or private, and as long as the first section of this Statute applied to Armstrong county, a compliance with its requisition was necessary in order to the validity of the proceedings. Let us then suppose that the legislature, instead of localizing the Act of 1860, which substitutes three viewers for the six required by the

[Road in Plumcreek Twp.]

Act of 1836, had passed it as an amendment thereto ; it would, in that event, have been clear that the provision for six viewers would be repealed, and instead thereof that of 1860 would take its place.   It would also follow, as of course, that the latter provision must apply to the laying out of all roads, whether public or private, and this because the amendment being a substitute for the previous enactment, its terms must govern.   But what difference can it make that the amendment is limited to the county of Armstrong?   The Act of 1836, as amended by that of 1860, is as much the law of this county as it ever was.   It was, at one time, the Act of 1836 with six viewers, it is now the same Act with three viewers. An amendment does not make a new Statute, but only alters the old one in the amended particulars.   How then can Armstrong county get beyond its own local code, or avail itself of a section of the old Act that, as to that locality, has been abrogated?   In all its road cases, it must certainly put up with three viewers, or none, since there is no provision for more than that number.

But, independently of this, the road view before us is fatally defective in several particulars.   In the first place, there appears by the record no notice to the owner of the land through which the road is to pass of the laying out thereof, or of the assessment of damages, and this, of itself, is enough to vitiate the decree of confirmation.   We understand, indeed, that, as to public roads, this court has taken both sides of the question; nevertheless, the more recent deliverances would seem to have definitely settled the doubt thus raised in favor of the position that, whilst notice to the land owner is necessary, yet it need not appear of record, but may be established in the Quarter Sessions by oral proof, and thus the matter is put beyond the power of review in this court, because, on a *certiorari*, we can make no inquiry concerning that which is not technically part of the record.   But, as the contention in hand is over a private road, the doctrine just stated does not apply.

In the case of Boyer's Road, 1 Wr., 257, we held that it must appear in the proceedings that notice was served on the land owner, of the time and place when and where damages were to be assessed, and that no one's property could be taken without such notice.   So in Neeld's Road, 1 Barr, 353, it was said that notice of the road view and the assessment of damages must appear, and that such notice was absolutely necessary.   That, " to take a man's property, and assess his damages without notice of it, is repugnant to every principle of justice, and such a proceeding is utterly void."   These were cases of private roads, and have never been overruled,

nor can we consent to their impeachment by cases which affect only public roads. The rights which are involved in the two are very different; in the one case, that of a public road, the commonwealth, in taking land for its own use, exercises its right of eminent domain, and it may be so taken without compensation: Township of East Union *v.* Comrey, 4 Out., 362. It follows that all provisions with reference to notice to the owners of land, through whose property a public road may chance to pass, are *ex gratia*, and not of right. But with private roads the matter is wholly different. Here is the taking of private property for private use. An assumption that is *prima facie* unconstitutional, and can only be justified by the strictest necessity. In such case, it requires no argument to sustain the position that a court has no more power to pass the use of one man's property over to another, without personal notice, than it would have to give judgment against one without the service of summons. Again, we cannot understand how damages can be assessed on a mathematical line, that which has length only without breadth or thickness. When the assessment was made, the court had not fixed the width of the road, and the viewers proposed none as the basis of their estimate. This was, of itself, an error fatal to the report.

> The order of the Court of Quarter Sessions of the 7th of July, 1885, dismissing the exceptions, and confirming the report of viewers, is reversed, and all proceedings in the premises are set aside as void and of no validity.